**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**AUNDREA HALE o/b/o E. H. ,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:05-cv-1019-Orl-31DAB**

**JO ANNE B. BARNHART, Commissioner**
**of Social Security,**

        **Defendant.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

On behalf of her daughter E.H., Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying the claim for Supplemental Security Income (SSI) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## *I. BACKGROUND*

### A.    Procedural History

On November 8, 2002, an application for childhood Supplemental Security Income (SSI) was protectively filed for the minor child, E.H. (the "Child"). R. 119-22. Plaintiff, Aundrea Hale, is

E.H.'s mother who is pursuing this appeal, alleging that the Child was disabled since July 15, 2002. Plaintiff's claim was denied initially and upon reconsideration. R. 38. On June 19, 2003, the Plaintiff timely requested a hearing before Administrative Law Judge Apolo Garcia (hereinafter referred to as "ALJ") which was held on November 16, 2004. R. 237-55. In a decision issued January 8, 2005, the ALJ found the Child not disabled as defined under the Act. R. 17-27. Plaintiff filed a Request for Review of Hearing Decision/Order, which the Appeals Council denied on May 5, 2005. R. 9-12. Plaintiff filed this action for judicial review on July 11, 2005. Doc. No. 1.

### B.     Medical History and Findings Summary

The Child's medical history is set forth in detail in the ALJ's decision. By way of summary, the eleven-year old Child complained of and was treated for asthma and allergies.

After reviewing the Child's medical records and the testimony of the Child and her mother (Plaintiff), the ALJ found that the Child had never engaged in substantial gainful activity. R. 26, Finding 2. The Child suffered from asthma, chronic allergies, and acute urticaria, which are "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R.26, Finding 4. The ALJ further found that the Child's subjective complaints were credible only to the extent they were supported by the evidence of record. R. 26, Finding 6. The ALJ found that the Child did not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning, and did not have an impairment which functionally equaled the severity of any listed impairment. R. 26, Finding 5. Accordingly, the ALJ determined that the Child had not been under a disability at any time through the date of the decision. R. 26, Finding 7.

Plaintiff now asserts that the ALJ erred in finding that the Child did not have "marked and severe functional limitations." Plaintiff contends that the ALJ improperly evaluated the Child's impairments and her ability to "move about and manipulate objects" (domain four) or the effect on her "health and physical well-being" (domain six). For the reasons that follow, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## *II. STANDARD OF DISABILITY AND STANDARD OF REVIEW*

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, the Child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and. . .which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906. The rules[1] follow the three-step sequential evaluation, under which SSA will consider: (1) whether the child is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924. Whether a child meets the "listing-level severity" standard is dependent upon whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. 20 C.F.R. § 416.926a. Under the regulations for children, there are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others;

---

[1] On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ.A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

(4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981); *see also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Walker*, 826 F.2d at 999.

### *III. ANALYSIS*

Plaintiff must show that the evidence as a whole establishes that Child's impairments functionally equaled the listings, *i.e.*, that Child's impairments resulted in "marked" limitations in two

domains of functioning or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a(a). A marked limitation is an impairment that interferes seriously with the ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926a(a)(2). An "extreme" limitation in a domain is an impairment that interferes very seriously with the ability to independently initiate, sustain, or complete activities and is the rating SSA gives to the worst limitations. See 20 C.F.R. § 416.926a(a)(3).

*Moving About and Manipulating Objects*

The Plaintiff argues that the ALJ erred by finding that the Child has no limitation in moving about and manipulating objects (domain four). In support of his finding of no limitation, the ALJ found that the Child was able to participate in track and field and play outside with friends. R. 24. Plaintiff contends that this finding was directly contrary to testimony at the hearing that the Child could not participate in organized sports (track and cheerleading), that her ability to participate in outdoor activities was limited and she could not play outside or run, ride a bike, or jump rope due to her asthma and her allergies. R. 144, 252, 249-50. Her mother (Plaintiff) was also limited in where she could take her due to potential environmental allergic reactions. R. 147. Plaintiff points to medical records which show the Child could not participate in track, cheerleading or outside activities for a full two years prior to the administrative hearing. R. 139, 145, 147.

The Commissioner contends that Plaintiff misunderstands the meaning of domain four, for which the ALJ should consider "how you [the Child can] move your body from one place to another and how you move and manipulate things. These are called gross and fine motor skills." 20 C.F.R. § 416.926a(j). There is no evidence, the Commissioner contends, that Claimant had any impairment affecting her gross and fine motor skills, and the ALJ properly relied on statements from the Child's

teacher that she had no limitations in the domain. R. 24, 153.  The Commissioner also contends that no treating or examining medical source reported limitations involving Plaintiff's gross and fine motor skills.

It is true that the Child was restricted in outdoor activities and heavy physical activities due to environmental allergies, including trees, molds, weeds and certain insect bites. R. 137-38. However, such limitations are not due to motor skills or manipulative limitations as described for domain four in the Social Security Regulations.  The Regulations specifically provide the following guidance on the domain of moving about and manipulating objects for school-aged children:

> (1)(I) Moving your body involves several different kinds of actions: Rolling your body; rising or pulling yourself from a sitting to a standing position; pushing yourself up; raising your head, arms, and legs, and twisting your hands and feet; balancing your weight on your legs and feet; shifting your weight while sitting or standing; transferring yourself from one surface to another; lowering yourself to or toward the floor as when bending, kneeling, stooping, or crouching; moving yourself forward and backward in space as when crawling, walking, or running, and negotiating different terrains (e.g., curbs, steps, and hills).
>
> (ii) Moving and manipulating things involves several different kinds of actions: Engaging your upper and lower body to push, pull, lift, or carry objects from one place to another; controlling your shoulders, arms, and hands to hold or transfer objects; coordinating your eyes and hands to manipulate small objects or parts of objects.
>
> (iii) These actions require varying degrees of strength, coordination, dexterity, pace, and physical ability to persist at the task. They also require a sense of where your body is and how it moves in space; the integration of sensory input with motor output; and the capacity to plan, remember, and execute controlled motor movements. . . .
>
> (2)(iv) As a school-age child, your developing gross motor skills should let you move at an efficient pace about your school, home, and neighborhood. Your increasing strength and coordination should expand your ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports. Your developing fine motor skills should enable you to do things like use many kitchen and household tools independently, use scissors, and write.

20 C.F.R. § 416.926a(j)(1)(I) & (2)(iv). The Child's limitations are not in the nature of those listed in the Regulations as examples, which all involve muscular and coordination problems:

> (3)(I) You experience muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia) that interferes with your motor activities (e.g., you unintentionally drop things).
> (ii) You have trouble climbing up and down stairs, or have jerky or disorganized locomotion or difficulty with your balance.
> (iii) You have difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike).
> (iv) You have difficulty with sequencing hand or finger movements.
> (v) You have difficulty with fine motor movement (e.g., gripping or grasping objects).
> (vi) You have poor eye-hand coordination when using a pencil or scissors.

20 C.F.R. § 416.926a(j)(1)(i)(3)(i)-(vi).

In addition, following Plaintiff and the Child's testimony at the hearing in November 2004, a report from the Child's treating allergist, Dr. Martinez, was submitted from a follow-up evaluation on January 20, 2005. Dr. Martinez noted that "Mother related the patient's asthma has been *well under control* . . . She has continued to experience hives on and off even though they have improved. . . . Mother relates that hives tend to respond to Allegra, she also fees that the introduction of Advair has *helped significantly with asthma symptoms*." R. 65 (emphasis added).

The ALJ's citation to information that the Child could play outside, run track, and cheerlead – which the Plaintiff complains was based on outdated activities – was proper because the fact remains that the Child physically had the motor skills and coordination to do such things and that had not changed even though her asthma and allergies had gotten worse (but improved by January 2005). The Child's gross and fine motor skills remain intact. The Child's third grade teacher opined that she had no problem moving or manipulating objects. R. 153. The ALJ's finding that Claimant had no limitations in moving about and manipulating objects was also supported by the opinions of the non-

examining State agency physicians. R. 25, 183, 189. There was substantial evidence to support the ALJ's finding of no limitation in the domain of moving about and manipulating objects.

*Health and Physical Well-Being*

The ALJ determined the Child had a "less than marked" limitation in the sixth domain of health and well-being. Plaintiff contends that the ALJ erred in failing to consider the Child's ability to independently initiate, sustain, or complete activities under the domain of health and physical well-being. Plaintiff argues that the ALJ erred by mechanically applying the frequency and durational factors and failing to determine the cumulative effects of the Child's impairments on her ability to independently initiate, sustain, or complete activities. Plaintiff also argues that the ALJ erred by finding the Child only had two to four serious episodes (R. 24), when, as Plaintiff testified, the Child had to go to the hospital about seven times in 2003 and four times in 2004. R. 247-48.

The Commissioner argues in response that, contrary to Plaintiff's contention, the ALJ explicitly stated that he considered Claimant's ability to independently initiate, sustain, and complete activities. R. 23, 25. The Commissioner correctly points out that given the absence of limitations in any other domain, Claimant had to show an "extreme" limitation in the remaining domain in order to functionally equal the listings and be found disabled. *See* 20 C.F.R. § 416.926a(a). The Commissioner contends that Plaintiff presents no evidence the Child had marked, let alone "extreme" limitations in her domain of health and physical well being.

The Social Security Regulations specifically provide the following guidance on the domain of health and well-being for school-aged children:

> In this domain, we consider the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning . . . When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause "extreme" limitation

-8-

>in your functioning, you will generally have an impairment(s) that "meets" or "medically equals" a listing.
>
>A physical or mental disorder may have physical effects that vary in kind and intensity, and may make it difficult for you to perform your activities independently or effectively. You may experience problems such as generalized weakness, dizziness, *shortness of breath*, reduced stamina, fatigue, psychomotor retardation, *allergic reactions*, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain.

20 C.F.R. § 416.926a(l) (emphasis added).

For the sixth domain of functioning, a claimant may be considered to have an "extreme" limitation if "frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a 'marked' limitation in paragraph (e)(2)(iv) of this section." 20 C.F.R. § 416.926a(e)(3)(iv). A child has an "extreme" limitation when her impairments "interfere very seriously with her ability to independently initiate, sustain, or complete activities." 20 CFR § 416.926a(e)(3)(i). The Regulations define "marked" limitation as "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). A finding of marked limitation in the sixth domain may be made if a claimant is frequently ill because of her impairments. 20 C.F.R. § 416.926a(e)(2)(iv). Frequent is defined as episodes of illness or exacerbation that occur on an average of three times a year, or once every four months, each lasting two weeks or more. 20 CFR § 416.926a(e)(2)(iv). A finding of marked limitation may also be made if a claimant's episodes do not occur as frequently as outlined above, or last as long, but if the overall effect of the episodes is equivalent in severity. *Id.*

Plaintiff contends that the ALJ is not allowed to rely solely on the durational factors in finding the Child not disabled; that is clearly not the intention of the Regulations when viewed as a whole (*see* 20 CFR § 416.926a(e)(2)(i)-(iv)), and Plaintiff cites no authority in support of that position.

The ALJ properly relied on the medical evidence which showed that although the Child had frequent allergic reactions, only two episodes were serious enough to go to the Emergency Room (without admission to stay at the hospital) in 2004, and each was of short duration. *See* R. 25, 88 (September 14, 2004); 95 (November 25, 2004); 227-31 (referring to ER visit on Thanksgiving Day 2004); *see also* R. 171 (July 2002 ER visit).

Plaintiff's testimony was otherwise exaggerated and not supported by the medical records or Plaintiff's reports to doctors found in the records. Plaintiff testified that the Child had severe asthma attacks where she stopped breathing "every day" during the summer and once a week or more in cooler weather. R. 244, 250. However, at the initial allergy consultation with Dr. Martinez on November 2, 2004, exactly two weeks before the hearing in front of the ALJ on November 16, 2004, Plaintiff told Dr. Martinez that the hives occurred approximately once every two weeks and denied other symptoms or other medical problems (except eczema). R. 67. Plaintiff also told Dr. Martinez that the Child experienced asthma attacks once per week, and not "everyday" as she testified at the hearing. R. 67; 244. Moreover, the follow-up report from Dr. Martinez dated January 20, 2005 noted that "Mother related the patient's asthma has been *well under control* . . . She has continued to experience hives on and off even though they have improved. . . . Mother relates that hives tend to respond to Allegra, she also feels that the introduction of Advair has *helped significantly with asthma symptoms*." R. 65 (emphasis added).

As the Commissioner points out the medical records also reflect Plaintiff's noncompliance in determining the source of the Child's allergies, *i.e.*, keeping a food diary for the Child when the allergist requested it and obtaining a medically recommended RAST (radioallergosorbent) test to ascertain the source of Claimant's allergies. R. 177, 192 (family had not obtained RAST over last 6 months- March 2003), 201 (RAST not done yet from August 2002 - September 2003).  In December 2004, after the Child had had two serious allergic reactions within the past three months, Dr. Martinez "again" had to "advise the mother on the importance of obtaining labs . . . and the importance of also performing food diary was emphasized."  R. 227 (duplicate of R. 106).  He reviewed "the potential of life threatening allergic reaction . . . with the mother." R. 227.  On January 20, 2005, Dr. Martinez advised the parent to see primary care physician for a pulmonology consultation.  "The importance of following with primary care physician regarding [his] recommendations was emphasized." R. 65. Dr. Martinez was also concerned that the Child see her primary care physician about her abnormal blood work results and abnormal chemistry with elevated calcium and protein.  R. 66.  Substantial evidence supported the ALJ's finding that there was a less than marked limitation in the domain of the Child's health and well-being.

## CONCLUSION

The record in this case shows that the Child does not enjoy full health and her activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard for children under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  If this

Recommendation is adopted, the Clerk of the Court should be directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 5, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy